Thomas A. Russell, State Bar No. 108607
RUSSELL & ASSOCIATES
833 Dover Drive, Suite 15
Post Office Box 11466
Newport Beach, California 92658
Mobile: (949) 244-6230
Office: (949) 854-6000
Facsimile: (949) 854-6001
Email: trussell@ra-law.com

Attorneys for Plaintiff
WACHOVIA BANK, N.A

FILED
JUN 06 2008
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY DEPUTY

ORIGINAL

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| WACHOVIA BANK, N.A.<br><br>Plaintiff,<br><br>vs.<br><br>*M/Y JUST A NOTION*, Official No. 1089525, her engines, tackle, furniture, appurtenances, etc., *in* rem; and GREGORY A. STRASBURG, as Trustor and Trustee of THE GREGORY A. STRASBURG REVOCABLE TRUST<br><br>Defendants. | CASE NO. 08 CV 1023 JAH AJB<br><br>**IN ADMIRALTY**<br><br>**Verified Complaint for Foreclosure of First Preferred Ship Mortgage**<br><br>46 U.S.C. § 31325; Federal Rules of Civil Procedure Supplemental Rules for Certain Admiralty and Maritime Claims Rule C |

COMES NOW plaintiff WACHOVIA BANK, N.A., and for its claims for relief against the defendant vessel *M/Y JUST A NOTION,* Official No. 1089525, her engines, tackle, furniture, appurtenances, etc., *in rem*, and against defendant GREGORY A. STRASBURG, as Trustor and Trustee of THE GREGORY A. STRASBURG REVOCABLE TRUST, and alleges as follows:

## JURISDICTION

1. This is a case of admiralty and maritime jurisdiction, as hereinafter more fully appears, and is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. This case seeks *in rem* foreclosure of a first preferred ship mortgage on a federally documented vessel and recovery of mortgage indebtedness. This court has jurisdiction under to 46 U.S.C. § 31325, 28 U.S.C. § 1331 and 28 U.S.C. § 1333.

## PARTIES

2. Plaintiff WACHOVIA BANK, N.A. ("WACHOVIA") is and was at all relevant times a national bank qualified to do business and doing business in California.

3. Defendant *M/Y JUST A NOTION*, Official No. 1089525, her engines, tackle, furniture, appurtenances, etc., *in rem* (collectively the "VESSEL") is and was at all relevant times a federally documented recreational vessel described as a 2000 Queenship 70' motor yacht. The VESSEL is now within the jurisdiction of the United States District Court for the Southern District of California and under arrest in a related *in rem* action before the Honorable Janice L. Sammartino, *Strasburg v. M/Y JUST A NOTION, etc., et al.*, USDC Case No. 08CV0021JLS (BLM)(the "Related Case").

4. Defendant GREGORY A. STRASBURG as Trustor and Trustee of THE GREGORY A. STRASBURG REVOCABLE TRUST ("STRASBURG") is and was at all relevant times an individual and a revocable trust in Menlo Park, California.

## GENERAL ALLEGATIONS

5. On February 9, 2004, STRASBURG executed a Marine Note and Security Agreement (the "Note") under which WACHOVIA extended credit to STRASBURG and STRASBURG agreed to pay WACHOVIA the total sum of $680,000 together with

interest and other costs and expenses. In accordance the Note and in consideration of WACHOVIA's extension of credit, STRASBURG granted WACHOVIA a security interest in the VESSEL. A copy of the Note is attached hereto as Exhibit "A".

6. On February 9, 2004, STRASBURG granted WACHOVIA a First Preferred Ship Mortgage (the "Mortgage") on the VESSEL. The Mortgage secures the obligations of the Note and the indebtedness thereunder. A copy of the Mortgage is attached hereto as Exhibit "B".

7. As shown in the General Index or Abstract of Title issued by the United States Coast Guard, the VESSEL is federally documented under Official No. 1089525. The Mortgage includes the whole of the VESSEL, as required by 46 U.S.C. § 31322(a)(1), and meets all the requirements of 46 U.S.C. § 31321(b) as it (i) identifies the VESSEL, (ii) states the name and address of each party to the Mortgage, (iii) states the amount secured by the Mortgage, (iv) states the interests of each party, and (v) is signed and acknowledged. The Mortgage was duly filed with the United States Coast Guard on March 22, 2004 at 10:20 AM in substantial compliance with 46 U.S.C. § 31321(a)(1), and is recorded in Batch BK 04-46, Doc. ID 376, in the Coast Guard records for the VESSEL. A copy of the General Index or Abstract of Title is attached hereto as Exhibit "C".

8. Accordingly, the Mortgage meets all the requirements of 46 U.S.C. Chapter 313, Subchapter II necessary to qualify as a first preferred ship mortgage. Under 46 U.S.C. § 31325(a), the Mortgage constitutes a lien on the VESSEL in the amount of the outstanding Note and Mortgage indebtedness.

9. STRASBURG has defaulted under the Note and Mortgage. STRASBURG has (i) failed to timely repay amounts due and owing thereunder, (ii) purported to convey

ownership and/or mortgage interests in the VESSEL to others, creating a dispute over title to the VESSEL, (iii) failed to remove notices of claims of lien against the vessel presently on file with the Coast Guard, and (iv) caused the arrest of this VESSEL by this Court, among other defaults. In particular, as shown in the General Index or Abstract of Title attached hereto (Exhibit "C") The Yacht Club LLC purports to claim a preferred mortgage on the VESSEL and several persons have recorded unexpired notices of claims of undischarged liens on the VESSEL: David Moniz, Kim Warner, Peter Blair, James R. Singleton, Rob La Brech and The Yacht Club LLC. In addition, the VESSEL remains under arrest in the Related Case. Nielsen Beaumont Marine, Inc. has been appointed as the Substitute Custodian. A copy of the "Order Appointing New Substitute Custodian and Authorizing Movement of Defendant Vessel" is attached hereto as Exhibit "D".

10. Under the terms of the Note and Mortgage, the indebtedness includes the unpaid principal balance, accrued interest, and reasonable attorney's fees and costs. As of May 29, 2008 principal and interest are due, owing and unpaid under the Note and Mortgage in the sum of $546,922.62. Interest, costs and attorney's fees are continuing to accrue.

## FIRST CLAIM FOR RELIEF

### (*In rem* to Foreclose a Preferred Ship Mortgage Under 46 U.S.C. § 31325(b)(1))

11. WACHOVIA incorporates herein by reference the allegations contained in paragraphs 1 through 10 above.

12. As provided in 46 U.S.C. § 31325 (a) and (b)(1), upon default of any term of the Mortgage WACHOVIA may bring a civil action *in rem* against the VESSEL to enforce its preferred mortgage lien. Exclusive jurisdiction over *in rem* actions to

foreclose preferred mortgages is granted to the district courts of the United States under 46 U.S.C. § 31325(c).

13. By reason of STRASBURG's defaults, WACHOVIA is entitled to judgment against the VESSEL to foreclose the Mortgage.

**SECOND CLAIM FOR RELIEF**

**(*In personam* for Mortgage Indebtedness Under 46 U.S.C. § 31325(b)(2))**

14. WACHOVIA incorporates herein by reference the allegations contained in paragraphs 1 through 13 above.

15. As provided in 46 U.S.C. § 31325 (b)(2), upon default of any term of the Mortgage WACHOVIA may bring a civil action *in personam* against STRASBURG for the full amount of outstanding indebtedness, or any deficiency in full payment of that indebtedness remaining after foreclosure sale of the VESSEL and distribution of the proceeds thereof. Original jurisdiction over *in personam* actions for outstanding indebtedness secured by preferred mortgages is granted to the district courts of the United States under 46 U.S.C. § 31325 (c).

16. By reason of STRASBURG's defaults WACHOVIA is entitled to judgment against STRASBURG for the mortgage indebtedness or any deficiency in payment thereof.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff WACHOVIA prays for relief as follows:

A. On the First Claim for Relief against the VESSEL:

1. That process *in rem* and a warrant of arrest be issued in due form of law in accordance with the practice of this Court in cases of admiralty and maritime

jurisdiction against the VESSEL, with notice to all persons claiming an interest therein to appear in answer to this Verified Complaint;

2. That this Court shall direct the manner in which the actual notice of the commencement of this suit shall be given by WACHOVIA under 46 U.S.C. § 31325(c);

3. That the Mortgage be declared a valid and subsisting lien upon the VESSEL, prior and superior to the interests, liens, and claims of all persons whatsoever, except such persons as may hold preferred maritime liens on the VESSEL;

4. That the Mortgage be foreclosed, and the VESSEL be condemned and sold, by order of this Court, and the proceeds of sale applied toward the amounts required to be paid by STRASBURG to WACHOVIA under the Note and Mortgage, including, without limitation, sum in excess of $546,922.62, including principal, interest, attorney's fees, costs of arresting, safeguarding, preparing for sale and selling the VESSEL, and all sums allowed by the Court; and

5. That it be decreed that any and all persons claiming any interest in the VESSEL arising prior to the sale are thereafter barred and foreclosed of and from all right, equity of redemption, and claim of, in, or to the VESSEL, and every part thereof, by reason of such interest.

B. On the Second Claim for Relief against STRASBURG:

1. That judgment be entered in favor of WACHOVIA, and against STRASBURG, for the full amount of mortgage indebtedness or for any deficiency remaining after sale of the VESSEL and distribution of the proceeds thereof.

C. On both Claims for Relief:

1. For costs and attorneys' fees as allowed by law;

2. For such other, further or different relief as the court deems just and proper.

DATED: June 6, 2008

RUSSELL & ASSOCIATES

By: [signature]
Thomas A. Russell
Attorneys for Plaintiff
WACHOVIA BANK, N.A.

## VERIFICATION

I, Rhonda Nixon, hereby declare as follows:

1. I am Recreational Finance Collections Manager of Wachovia Dealer Services, a wholly owned subsidiary of plaintiff WACHOVIA BANK, N.A. I am responsible for collection of marine loans of WACHOVIA BANK, N.A., including the loan to THE GREGORY A. STRASBURG REVOCABLE TRUST that is the subject of the captioned lawsuit. I am authorized to make this Verification on behalf of WACHOVIA BANK, N.A.

2. I have read the foregoing Complaint and know the contents thereof. The facts stated in the complaint are true to the best of my knowledge and belief

Executed on June 2, 2008 at Greenville, North Carolina.

I declare under penalty of perjury that the foregoing is true and correct.

Rhonda Nixon

EXHIBIT A

# Marine Note and Security Agreement

Wachovia Bank, N.A. (Lender)

**WACHOVIA**

Date 2/9/04

3123289 Loan No. ~~3111969~~
10500002514102

**Borrower's Name and Address:**

**Co-Borrower's Name and Address:**

THE GREGORY A. STRASBURG REVOCABLE TRUST

1254 HOOVER ST.

MENLO PARK, CA 94022

In this agreement ("Agreement") which governs your loan with us, "Borrower" means the borrower(s), including any co-borrower(s), who sign(s) this Agreement. "Lender" means Wachovia Bank, N.A., or anyone to whom Lender assigns this Agreement. Each person who signs this Agreement is separately, individually and jointly responsible for repaying this loan and is bound by all of the terms of this Agreement. Borrower promises to pay Lender the principal sum of SIX HUNDRED EIGHTY THOUSAND Dollars (680,000.00) ("Principal"), together with interest thereon and all charges, fees and other amounts as may become due as established in this Agreement.

**Interest.** Interest will begin to accrue on 02/09/04, or on the date of this Agreement if no date is specified, at the rate described below on the unpaid portion of the Principal indebtedness until the Principal has been paid in full. Interest will be calculated on a basis of a 365 day year for the actual number of days any part of the Principal remains outstanding. Interest will be calculated and will accrue according to the provisions of the box checked below:

☒ Fixed Rate of 5.37 % per annum;

☐ The rate(s) set forth in the Rider attached to this Agreement, which is incorporated herein by reference.

After demand or maturity (whether by default or otherwise), as applicable, interest on any unpaid balance hereof shall be payable on demand at a rate per annum equal to 2% above the rate applicable prior to demand or maturity, until Lender has received payment in full, not to exceed the maximum rate permitted by law.

**Repayment.** Borrower agrees to make payments to Lender at Lender's address of P.O. BOX 1759, WINTERVILLE, NC 28590 , or at such place that Lender may direct from time to time in writing, in immediately available funds of lawful money of the United States according to the provisions of the box checked below:

☒ 180 payments of $ 5,509.36 beginning 03/09/04 and thereafter MONTHLY until FEBRUARY 9 , 2019 when the entire Principal then outstanding and all accrued but unpaid interest, fees and costs shall be paid in full;

☐ consecutive monthly installments on the day of each month in the amount of $ in principal plus accrued interest, with the first of such monthly installments beginning on , and one final installment (balloon payment) of $ due and payable on (the "Maturity Date"). Unless sooner paid, all outstanding principal and all accrued but unpaid interest, fees and costs shall be due and payable in full on the Maturity Date.

☐ As set forth in the Rider attached to this Agreement, which is incorporated herein by reference.

Any adjustments to the amount owed resulting from payments received on days other than the days Borrower is scheduled to pay will be reflected in the final payment owed. If payments are received later than the day of the month when due, there will be additional interest which may result in a higher final payment. Lender may insist that any interest arrearages be brought current from time to time in addition to the monthly installments Borrower is obligated to pay.

To the extent not prohibited by law, a late charge of four percent (4%) or the applicable statutory maximum, whichever is greater, shall be assessed on any payment remaining past due for fifteen (15) days or more.

Each payment by Borrower shall be applied, unless otherwise provided herein, first to pay interest due on the date the payment is received; next, to any fees, charges, expenses or other obligations then due under this Agreement other than Principal; and the balance, if any, to the unpaid Principal. Notwithstanding the foregoing, upon the occurrence of a default hereunder, payments shall by applied as determined by Lender at Lender's sole discretion.

**Prepayment Penalties.**

☒ If this box is checked, upon making any prepayment, Borrower must, if required by Lender, pay to Lender a premium equal to 1.5 % of the amount so prepaid. If the payment occurs more than 24 months after the date of this Agreement, there shall be no prepayment penalty.

**Origination Fees.** Borrower agrees to pay a loan origination fee of $0.00. (This fee is due and must be paid to Lender on the date of this Agreement).

**Collateral Description.** Lender is extending this loan to Borrower to purchase the vessel described below ("Vessel"). Borrower is granting a security interest in this Vessel.

Year 2000 Manufacturer: QUEENSHIP

Model: 70 MY New ☐ Used ☒

Hull Material: ☒ Fiberglass ☐ Wood ☐ Metal

L/O/A 70'

Engine(s): ☐ Gas Year: 1996 H.P. 800

☒ Diesel Engine Serial # P S

Manufacturer: CATERPILLAR

Name of Boat: JUST A NOTION

State/Coast Guard No. 1089525

Hull Serial # QCWGK115M001

Home Port or Anchorage: GOLD COAST ANCHORAGE, SAN DIEGO, CA

Winter Storage: GOLD COAST ANCHORAGE, SAN DIEGO, CA

**Itemization of Principal.**

1. Amount given to Borrower directly $ (1)
2. Amount credited to Borrower's account with Lender:
   - (A) $
   - (B) $
   - Total amount credited to Borrower's account(s) with Lender $ (2)
3. Amounts paid to others on Borrower's behalf:
   - (A) Public Officials $
   - (B) Documentary Stamp Tax $
   - (C) Other Charges:
     - To FRASER YACHTS $680,000.00
     - To $
     - To $
     - To $
   - Total amounts paid to others on Borrower's behalf: $680,000.00(3)
4. Total amount financed $680,000.00(4)

**BORROWER HEREBY AGREES, REPRESENTS AND WARRANTS THAT THE VESSEL IS NOT AND SHALL NOT BE USED AS BORROWER'S PRINCIPAL DWELLING PLACE.**

**Creation of Security Interest.** In consideration of the extension of credit as described in this Agreement and as security for payment of all that is owed under this Agreement, Borrower hereby grants to Lender a security interest in : (a) the Vessel, together with all masts, cables, engines, machinery, sails, rigging, auxiliary boats, anchors, chains, tackle, spare parts, apparel, furniture, fixtures, tools, pumps, equipment and supplies, radar and other electronic equipment, and all fishing equipment and other attachments, accessions, appurtenances, accessories, additions, improvements, replacements, substitutions, supplies and necessaries of all kinds, affixed to or used in or on the Vessel, whether or not removed from the Vessel, (b) all freights, charter hire, earnings, income, revenue, profits and proceeds of sale or lease of the Vessel, or proceeds of requisition of title to the Vessel by governmental authority, if any, insurance claim payments and returned unearned premiums, whether in the form of cash or any other property, derived from the Vessel, and (c) any and all of Borrower's funds or property on deposit with or held by Lender, to the extent permitted by applicable law. If, however, Borrower is not a corporation and the Vessel is purchased primarily for Borrower's non-business use, the security interest under this Agreement shall not cover any items acquired by Borrower more than ten (10) days after the date of this Agreement unless they are made part of the Vessel

**Marine Note and Security Agreement (continued)**

**Security Agreement.** If the Vessel is subject to documentation under the laws of the United States in Borrower's name, Borrower agrees that the Vessel will be documented in Borrower's name and that a First Preferred Ship Mortgage on the Vessel in Lender's favor will be filed and recorded with the U.S. Coast Guard. Borrower agrees to cooperate in regard to and pay all costs of federal documentation and filing and recording the First Preferred Ship Mortgage on Vessel in Lender's favor. In addition, Lender may require that Borrower register the Vessel with the appropriate authority in the state of principal use and that Lender's security interest be perfected under state law, whether through filing of a financing statement, or notation on a certificate of title, or both. Borrower agrees to cooperate in regard to and pay all costs of registration of the Vessel and perfection of Lender's security interest under state law. Borrower also agrees to pay all applicable taxes and other fees due and owing under the laws of any state with respect to the Vessel, its purchase and use, including but not limited to the state of the Vessel's principal use. Lender may, but is not obligated to, pay these amounts for Borrower. If Lender does pay these amounts, Borrower agrees to repay Lender on demand, with interest at the rate provided in this Agreement. Borrower agrees that such amount will be secured by the security interest Borrower has granted to Lender.

**Title Warranty.** Borrower represents and warrants that Borrower lawfully owns the whole (100%) of the Vessel. Borrower agrees that Borrower will be responsible for Lender's expenses and losses if anyone other than Borrower or Lender claims an interest in the Vessel or any part of it.

**Liens.** Borrower represents that the Vessel is free from all prior liens, bills, taxes, mortgages or encumbrances of any nature or kind whatsoever except for the security interest provided in this Agreement and the lien of a First Preferred Ship Mortgage filed against the Vessel in Lender's favor. Borrower agrees not to create, incur, or permit to be placed on the Vessel any lien whatsoever, including any maritime lien, other than to Lender. Borrower agrees that if any lien on the Vessel arises or is claimed Borrower will, within 30 days from inception of the lien claim, satisfy the lien claim.

**Further Assurances.** From time to time, Borrower shall sign and deliver to Lender such other and further documents and assurances as Lender may require to maintain the priority of this Agreement, the Preferred Ship Mortgage and any other security interest Lender has in the Vessel.

**Financial Reporting.** Borrower will give Lender any annual and other periodic financial reports Lender may reasonably request.

**Risk of Loss; Insurance.** (a) At all times, Borrower agrees to bear the risk of damage to, theft, destruction or other loss of the Vessel. Damage, theft, destruction, or other loss of the Vessel will not release Borrower from Borrower's obligations to Lender under this Agreement. (b) Until this Agreement is fully paid and performed, Borrower agrees to maintain in full force and effect fire, theft, and "all risk" marine hull and machinery and protection and indemnity insurance on the Vessel, and such other insurance covering such risk and perils, upon such terms and in such amount and with such endorsements as Lender may reasonably require. In addition to protecting Borrower, the insurance must protect Lender as a loss payee and as an additional insured (without liability for payment of premium) and must be written for at least one year at a time. The amount of Borrower's marine hull and machinery insurance shall not be less than the market value of the Vessel or the unpaid amount of the debt under this Agreement, whichever is greater (except as otherwise restricted by law). The underwriter and maximum deductible on Borrower's insurance must be reasonably satisfactory to Lender. (c) Lender may sign any proof of loss and endorse any check, draft, or other form of payment issued by the insurance company or its agent as a loss payment and Borrower hereby appoints Lender as Borrower's attorney-in-fact for this purpose. This power of attorney shall not be affected by Borrower's disability. Proceeds of the insurance may be used to either repair the Vessel or to reduce the debt owed under this Agreement, in Lender's discretion. (d) If Borrower's insurance lapses or is canceled at any time before this Agreement is fully paid and performed, Lender must be given prompt notice of the lapse or cancellation. In the event of lapse or cancellation, or in the event Borrower fails to pay premiums when due or otherwise to provide or maintain insurance coverage, Lender may, but is not obligated to, buy replacement coverage protecting Borrower and Lender, or Lender alone. Borrower agrees to repay Lender for the premiums at Lender's request with interest at the rate in effect under this Agreement.

**INSURANCE IS REQUIRED IN CONNECTION WITH THIS LOAN. BORROWER HAS THE OPTION TO FURNISH THE REQUIRED INSURANCE COVERAGE THROUGH AN INSURER OR AGENT OF BORROWER'S CHOICE OR THROUGH AN INSURANCE POLICY THAT IS IN EXISTENCE AND THAT IS OWNED OR CONTROLLED BY BORROWER OR AN INSURANCE POLICY OBTAINED FROM AN INSURANCE COMPANY AUTHORIZED TO DO BUSINESS IN THE STATE IN WHICH THIS AGREEMENT IS EXECUTED. LENDER MAY REJECT BORROWER'S CHOICE OF INSURER OR AGENT ONLY IF BASED ON REASONABLE STANDARDS AS PROVIDED BY APPLICABLE LAW.**

**Duty to Maintain Vessel.** Borrower agrees to keep the Vessel seaworthy and in good condition and repair at all times. Borrower agrees that Borrower will not, without Lender's prior written consent, make any substantial change or alteration in the Vessel, its structure, rigging, or engines.

**Change of Address or Location of Vessel.** Borrower will not, without Lender's prior written consent, move the Vessel from the place(s) as stated herein where it is customarily moored in the summer or stored in the winter, as the case may be, or from the State of the Vessel's principal use, other than for voyages with the intent of returning. Borrower agrees to inform Lender within thirty (30) days if Borrower changes Borrower's name, identity, ownership, membership or structure in any manner. Borrower will notify Lender promptly if Borrower changes Borrower's principal residence or place of business. Borrower agrees that any and all notices sent by Lender to the address listed herein for Borrower, or the last known address of record for Borrower, shall constitute adequate notice to Borrower for all purposes.

**Transfer of Flag.** Borrower shall not, without the prior written consent of Lender, transfer or change or attempt to transfer or change the Flag of the Vessel, and any such written consent to any one transfer or change of Flag shall not be construed to be a waiver of this provision with respect to any subsequent proposed transfer or change of Flag. ANY TRANSFER OR CHANGE TO WHICH LENDER CONSENTS SHALL BE SUBJECT TO ALL THE PROVISIONS OF THIS AGREEMENT AND THE LIEN IT CREATES. ANY OTHER TRANSFER OR CHANGE OF THE FLAG OF THE VESSEL SHALL BE NULL AND VOID AS TO THE LENDER.

**Displaying Notice and Exhibiting Preferred Mortgage.** Borrower agrees to promptly place aboard and post prominently in the Vessel a proper copy of the Preferred Mortgage in Lender's favor and shall keep with the Vessel's papers the Preferred Mortgage and shall show the Preferred Mortgage to all persons having business with the Vessel.

**Use of Vessel.** The Vessel may be operated only for pleasure and may not be used for any commercial purposes, unless Lender otherwise agrees in writing. The Vessel may be operated only within the geographical limits and other requirements of the marine insurance covering the Vessel. If the Vessel is chartered, with or without Lender's permission, Borrower agrees to and Borrower hereby assigns to Lender all charter hire and all other payments received in consideration for said charter as additional security for this Agreement. Borrower shall keep all dockage charges current. Borrower shall not use, nor allow the use of, the Vessel for any illegal purpose or contrary to any provision of the laws, treaties, regulations or orders of the United States or other jurisdiction in which the Vessel is operated. If Borrower takes the Vessel to another country, Borrower will comply with all pertinent treaties between the United States and such country. The illegal commerce in, or possession, carriage, or use of any firearms or controlled substance whatsoever on or about the Vessel is absolutely prohibited.

**Restrictions on Sale, Charter or Use of Vessel.** Borrower will not, without Lender's prior written consent, sell or mortgage the Vessel, pledge it as security for any other loan, give it away, lease, charter, carry passengers for hire, or otherwise use it in a manner or for purposes contrary to that specified in this Agreement.

**Seizure of Vessel.** Borrower shall notify Lender promptly, not later than 48 hours, by telephone, confirmed by telegraph, cable or facsimile, if the Vessel is arrested, libeled, attached, detained, seized or levied upon or taken into custody, or if Borrower becomes aware that any claim of lien upon the Vessel has been filed or prosecuted. Borrower shall immediately take steps to have the Vessel released or take such other steps as Lender may reasonably require, including posting bond or security for the Vessel. In the event the Vessel is seized, arrested, or detained by any governmental authority, Borrower authorizes Lender to disclose any information which Lender deems necessary to protect Lender's interest in the Vessel and Borrower further authorize Lender or Lender's agents in Borrower's name and as Borrower's attorney-in-fact to (i) receive or take possession of the Vessel, (ii) defend any action and/or discharge any lien, (iii) refer the protection of Lender interest in the Vessel to an attorney not a salaried employee of Lender's and receive from Borrower reasonable attorneys' fees. This power of attorney shall not be affected by Borrower's disability.

**Default.** Borrower will be in default under this Agreement if, at any time: (1) Borrower has made a false or misleading statement about any important fact in this Agreement or application for credit; (2) Borrower does not make any payment or pay any other sum when due under this Agreement; (3) Borrower breaches any warranty, promise or agreement Borrower has made in this Agreement or any other document related to this Agreement; (4) Borrower dies or becomes incompetent or otherwise unable to make timely payments of any sum due under this Agreement; (5) Borrower becomes insolvent; (6) Borrower files for bankruptcy, receivership, insolvency or similar proceedings or creditors institute or file any such proceedings against Borrower; (7) the Vessel is arrested, attached, levied upon, seized, or made the subject of legal proceedings, or held by virtue of any lien or distress, or any notice of claim of lien on the Vessel is filed; (8) Borrower allows the Vessel to lessen in value, other than through normal depreciation, such that Lender believes in good faith that Lender's interest is no longer adequately protected; (9) Lender's prospect of payment, performance or ability to realize upon the collateral is significantly impaired; or (10) any other event occurs that Lender in good faith believe endangers Borrower's ability to pay the amount owed under this Agreement. If Borrower is a corporation, Lender also may demand full payment if Borrower ceases doing business as a going concern, makes an assignment for the benefit of creditors, liquidates substantially all of its assets, files for dissolution or if all or any part of its stock is transferred to any person not an original guarantor of this Agreement.

**WAIVER OF RIGHTS.** Borrower agrees, to the extent permitted by law, to waive any common law right Borrower may have to receive notice of intent to accelerate this debt and notice of acceleration.

**Remedies Upon Default.** If Borrower is in default under this Agreement, or any other instrument related to or securing this Agreement, Lender may do any one or more of the following with or without prior notice to Borrower or demand for performance, except as may be required by applicable law: (1) require that Borrower pay immediately the full unpaid balance of the debt owed under this Agreement (subject to any right to cure Borrower may have under applicable law); (2) set off Borrower's liability against or foreclose any funds of Borrower's held by Lender in an account of general deposit (other than IRA accounts, Keogh pension plan accounts or similar accounts); (3) demand that Borrower assemble and deliver the Vessel to Lender at such location as Lender may reasonably require (however, Borrower's delivery of the Vessel will not relieve Borrower of Borrower's obligation to satisfy any deficiency which may arise upon the subsequent sale or other disposition of the Vessel); (4) lawfully enter any premises where the Vessel may be located and repossess the Vessel, with or without judicial process or judicial decree; (5) sell or otherwise dispose of the Vessel; (6) bring suit at law, in equity, or in admiralty to foreclose Lender's security interest and/or recover judgment for any and all amounts due under this Agreement; (7) pursue any other remedy provided to Lender under any applicable law; (8) refer this Agreement to an attorney for collection or enforcement and recover from Borrower reasonable



10

**Marine Note and Security Agreement (continued)**

attorneys' fees, to the extent permitted by applicable law; (9) require that Borrower pay court costs and any reasonable amount spent for repossessing, storing, preparing for sale, or selling the Vessel, and any and all other foreclosure costs to the extent permitted by applicable law.

**Disposition of Vessel; Application of Proceeds.** (a) If Lender repossess the Vessel without judicial process, Lender may, in Borrower's name or in Lender's name, sell, lease, charter, operate or otherwise use the Vessel as Lender deems advisable, without being responsible for loss or damage, and Lender may keep the Vessel at Borrower's premises or elsewhere, at Borrower's expense. For this purpose and subject to any applicable state regulation, Lender is irrevocably appointed Borrower's true and lawful attorney-in-fact to make all necessary transfers of the Vessel, to pay, defend or obtain the release of all maritime liens, to waive and release any warranties at disposition, and to take all related actions in Borrower's name and stead as may be necessary and appropriate to enforce Lender's rights under this Agreement. This power of attorney shall not be affected by Borrower's disability. (b) The proceeds of sale or other disposition of the Vessel shall be applied in accordance with applicable law. To the extent permitted by applicable law, any late charges, costs of retaking the Vessel, storage, costs of sale including but not limited to cleaning, repairing and/or maintenance expenses, auctioneer's fee, sales commission, if any, and advertising, insurance, allowable attorneys' fees, collection costs, court costs, and any other necessary expenses will be paid first from the proceeds of the sale or other disposition of the Vessel. Next, all accrued interest to date of payment and any and all other sums (other than Principal) due pursuant to the terms of this Agreement shall be paid. Finally, the outstanding Principal shall be paid. Any surplus of proceeds of sale or disposition of the Vessel over the amounts of such charges and expenses and amounts owed to Lender shall be paid to Borrower to the extent that such surplus is not required to be paid to other persons with liens on the Vessel. Borrower shall be liable for any deficiency.

**Nonwaiver of Rights by Lender.** Lender may delay in enforcing or fail to enforce any of its rights under this Agreement without losing any of them. Even if Lender does not enforce any right at one time, Lender may enforce it at a later time. Lender may also waive some of its rights without waiving any others. No waiver by lender of any of its rights will be effective unless in writing and signed by Lender.

**Validity, Amendment.** If any provision of this Agreement cannot be enforced, the rest of this Agreement will stay in effect. No amendment to this Agreement will be valid unless in writing and signed by Borrower and Lender.

**Assignment.** This Agreement may be assigned by Lender at any time without prior notice to Borrower. If this Agreement is assigned, Borrower's rights and obligations under this Agreement will be transferred with it to the assignee. After any assignment, Lender shall have no responsibility to Borrower under this Agreement; but, Lender shall keep all rights and powers not so assigned. After assignment, the term "Lender" shall refer to the assignee.

**Good Standing of Corporate Borrower, Partnership, Trust.** If this Agreement is given by a corporation (including a limited liability company), such corporate borrower represents and warrants that it is properly incorporated (or organized) and validly exists under the laws of the state of its incorporation and it will continue in good standing until this Agreement is fully paid and performed. If this Agreement is given by a partnership or a trust, such partnership or trust borrower shall not, without Lender's prior written consent, add or remove partners, amend the partnership agreement or dissolve the partnership, add or remove any trustees, or amend the trust agreement or revoke the trust, until this Agreement is fully paid and performed. Borrower represents and warrants that the execution, delivery, and performance of this Agreement is duly authorized by all necessary corporate or partnership action or by all trustees, as appropriate, and does not contravene any articles of incorporation or organization, bylaws, agreements, or trust provisions as they may apply to such corporation, partnership or trust.

**Miscellaneous.** All of Borrower's obligations, promises and agreements hereunder shall bind Borrower's heirs, executors, administrators, personal representatives, successors and assigns.

**Patriot Act Notice.** To help fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.

**This Agreement will be governed by the laws of North Carolina and any applicable federal law. Borrower acknowledges that this Agreement will not be effective until accepted by Lender at Lender's principal place of business in North Carolina.**

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN BORROWER AND LENDER AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS. THERE ARE NO UNWRITTEN ORAL AGREEMENTS, REPRESENTATIONS OR WARRANTIES BETWEEN BORROWER AND LENDER.**

**Notice to Co-Signer: Your signature on this note means that you are equally liable for repayment of this loan. If the Borrower does not pay, the Lender has a legal right to collect from you.**

**IT IS IMPORTANT THAT BORROWER READ THIS AGREEMENT. BY SIGNING BELOW, BORROWER AGREES TO THE TERMS AND CONDITIONS OF THIS AGREEMENT AND CONFIRMS THAT BORROWER HAS RECEIVED A COMPLETELY FILLED-IN COPY OF THIS AGREEMENT.**

Borrower: ______________________ (Seal) Co-Borrower: ______________________ (Seal)

Borrower: ______________________ (Seal) Co Borrower: ______________________ (Seal)

**Corporate/Partnership/Trust Borrower.** If the Borrower is a Corporation, Partnership, Trust, or other legal entity, the signature below is that of an officer, partner, agent or trustee duly authorized to execute this Agreement on behalf of the Corporation, Partnership, Trust or legal entity.

THE GREGORY A. STRASBURG REVOCABLE TRUST

By: GREGORY A. STRASBURG (If co-trustee) By: ______________________ (Seal)

[signature], Trustee (Seal) ______________________ (Seal)

Title: TRUSTEE Title:

**Acknowledgment for Individual Borrower(s):**

STATE OF ______________________
COUNTY OF ______________________

The foregoing instrument was signed, sealed and acknowledged before me this ______ day of ______________, ________, by ______________________ each of whom is personally known to me or has produced ______________________ as identification.

Notary Signature: ______________________ Print/Type Name: ______________________
Commission Expires: ______________________ (NOTARY SEAL)

**Acknowledgment for Corporate/Partnership/Trust Borrower:**

STATE OF CALIFORNIA
COUNTY OF SAN FRANCISCO

The foregoing instrument was signed, sealed and acknowledged before me this 9 day of FEBRUARY, 2004, by GREG STRASBURG who acknowledged that (he)/she/they is/are an authorized officer/partner/agent/(trustee) of THE GREGORY A. STRASBURG REVOCABLE TRUST and that by authority duly given and as an act of ______________________ the foregoing instrument was signed in its name by (him)/her/them as its authorized officer/partner/agent/(trustee).

Notary Signature: [signature] Print/Type Name: SUSAN LOUGHRIDGE
Commission Expires: 7-18-05 (NOTARY SEAL)

SUSAN LOUGHRIDGE
COMM. # 1309698
NOTARY PUBLIC • CALIFORNIA
SAN FRANCISCO COUNTY
Comm. Exp. JULY 18, 2005

15010 (10/01) NOTICE: SEE OTHER PAGES FOR IMPORTANT INFORMATION

11

WACHOVIA

# First Preferred Ship Mortgage

This is a First Preferred Ship Mortgage on the whole (100%) of the vessel ("Vessel") known as: JUST A NOTION

Dated: 02/09/04

THE AMOUNT OF THIS MORTGAGE, as required to be shown by the Ship Mortgage Act of 1920, as amended and recodified, is the Amount of Loan of $680,000.00 excluding interest, charges, expenses, and fees. This Mortgage also secures repayment of simple interest as it accrues, charges, expenses and fees, as well as performance of the representations, warranties and promises contained in this Mortgage.

MORTGAGOR: Gregory A. Strasburg, Trustee of the Gregory A. Strasburg Revocable Trust , owning 100% of the Vessel

ADDRESS: 1254 Hoover St

Menlo Park, CA 94022

MORTGAGOR:

, owning % of the Vessel

ADDRESS:

who, together with the Other Owners identified below, own the whole (100%) of the Vessel.

OTHER OWNER(S

, owning % of the Vessel

ADDRESS:

MORTGAGEE: Wachovia Bank, N.A.
P.O. Box 1759
Winterville, NC 28590

The words, "Mortgagor", and "Mortgagor's" mean each and every person (including individuals, partners, trustees, limited liability companies, corporations, or other entities) who signs this Mortgage as Mortgagor and, where applicable, any Other Owner and the personal representatives, successors and assigns of Mortgagor and any Other Owner. The words "Mortgagee" and "Mortgagee's' mean the Mortgagee and anyone who has Mortgagee's rights under this Mortgage.

1. Mortgage Obligation: This Mortgage secures Mortgagor's obligations now due or which may become due in the future to Mortgagee under this Mortgage and under a promissory note now held by Mortgagee dated 02/09/04and such other note, promissory note, or debt instrument which Mortgagor executes and which is intended to be secured by this Mortgage (all hereinafter the "Note") requiring monthly payments of principal, interest, charges, expenses and fees ("Debt"), which Note is given by Mortgagor as borrower to Mortgagee or to a third party which may have assigned to Mortgagee its rights under the Note as lender to be secured by this Mortgage on the Vessel.

2. Promise to Pay: Mortgagor will pay the Debt and perform all the obligations under this Mortgage and the Note.

3. Payment Schedule: Mortgagor will pay the principal and interest on the Debt in 180 monthly payments of $5509.36 each beginning on 3/9/04 and thereafter on the same day of each consecutive month with a final estimated payment of 5,509.36. Interest may accrue at a fixed or variable rate as provided in the Note. A more detailed description of Mortgagor's payment obligation is contained in the Note.

4. Multiple Mortgagors: If more than one person signs this Mortgage as Mortgagor, each such person, separately, individually, and jointly, is responsible for paying the full amount of the Debt and doing everything required of Mortgagor. Mortgagee may require any one co-Mortgagor to pay the entire amount of the Debt without notifying or requiring payment from any other person. Mortgagee may, but does not commit to, at any time or from time to time, give one Mortgagor extensions to pay or change or release his or her or its responsibility without releasing any co-Mortgagor or without treating any co-Mortgagor in the same way. Mortgagor's obligation to pay is absolute and unconditional.

5. Other Owner: Each person who signs this Mortgage as an Other Owner does not thereby become personally liable on the Note or for the Debt, but each Other Owner does make all of the other warranties and promises of the Mortgagor herein. Mortgagee may make any accommodations with regard to the terms of this Mortgage or the Note without notifying or obtaining the consent of such Other Owner and without releasing such Other Owner or modifying this Mortgage as to that Other Owner's interest in the Vessel.

6. Mortgage: In consideration of Mortgagee's extension of credit and to secure the Debt, and subject to the terms and conditions of this Mortgage, Mortgagor hereby grants, mortgages, and conveys to Mortgagee the whole (100%) of the Vessel named and described in this Mortgage, to have and to hold the whole of the Vessel unto Mortgagee, Mortgagee's successors and assigns, for Mortgagee's use and benefit forever, provided that if Mortgagor repays the Debt and keeps all of the promises made in and secured by this Mortgage, then this Mortgage and the estate and rights hereby granted shall cease and be void. Mortgagor acknowledges and agrees that, in addition to this Mortgage, Mortgagee retains and reserves any other security interests or rights Mortgagor has granted Mortgagee, or may grant Mortgagee in the future, outside this Mortgage, for the purpose of securing the Debt. All freights, charter hire, earnings, income, revenue, profits and proceeds of sale or lease of the Vessel, or proceeds of requisition of title to the Vessel and insurance claim payments and returned or unearned premiums, whether in the form of cash or other property, derived from the Vessel are also hereby mortgaged, conveyed and assigned unto Mortgagee on the conditions and estates of this Mortgage.



12

7. Vessel Description: 2000 Queenship 70 Motor Yacht

Name: JUST A NOTION O.N. # 1089525 HIN # QCWGK115M001
State of Principal Use: California Gross Tons: 63 Net Tons: 51
Summer Mooring: Gold Coast Anchorage - San Diego, CA

Winter Mooring or Storage: Same

Together with masts, towers, boilers, cables, engines, machinery, bowsprits, sails, rigging, auxiliary boats, anchors, chains, tackle, apparel, furniture, fittings, tools, pumps, radar and other electronic or other equipment and supplies, and all fishing and other attachments and accessories, now forming part of the Vessel or used in or on the Vessel or which may become part of the Vessel in the future, whether or not removed from the Vessel (all called the "Vessel"). If Mortgagor is not a corporation and the Vessel was purchased primarily for Mortgagor's own non-business use, the lien of this Mortgage shall not cover any items added to the Vessel more than 10 days after the date of the Note that are not made a part of the Vessel.

Mortgagor also grants Mortgagee a security interest in all monies and claims for monies which may be payable due to the actual, constructive, agreed, arranged or compromised total loss, requisition for title or use, seizure, condemnation, confiscation, sequestration or compulsory acquisition or other interference with Mortgagor's ownership or use of the Vessel by act of any country or of any governmental authority or otherwise. Mortgagor also grants Mortgagee a security interest in all claims for damages or compensation with respect thereto and proceeds of all policies of insurance now or hereafter taken out in respect of the Vessel including all claims of whatsoever nature and return of premiums.

8. Citizenship: Mortgagor is, and shall continue to be, a citizen of the United States as required by the laws pertaining to the documentation and any trading privileges of the Vessel until this Mortgage is fully paid and performed.

9. Right to Own and Operate: The Vessel is documented in Mortgagor's name under the laws of the United States. Mortgagor owns the Vessel and shall continue to be entitled to own and operate the Vessel under her marine document. Mortgagor represents and warrants that if the Vessel is documented with other than a recreational endorsement, it always shall be under the command of a citizen of the United States.

10. Marine Document: Mortgagor shall maintain the marine document of the Vessel in full force and effect.

11. Signing, Authorization and Validity: Mortgagor, or, if this Mortgage is given by a corporation, the Board of Directors of the corporation, or if this Mortgage is given by a limited liability company, partnership or trust, the authorized member(s), partner(s) or trustee(s), have signed or authorized and directed the signing of all papers and taken all actions necessary for the signing and delivery of this Mortgage and the Note which created the Debt secured by this Mortgage. The Note and this Mortgage are valid and enforceable.

12. Good Standing of Corporate Grantor, Partnership, Trust: If this Mortgage is given by a corporation or a limited liability company, Mortgagor represents and warrants that Mortgagor is properly incorporated or organized and validly exists under the laws of the state of Mortgagor's incorporation or organization, and Mortgagor will continue in good standing under the laws of the state of Mortgagor's incorporation or organization, and Mortgagor will continue to be qualified to do business (if required to do so by applicable law) in every state in which Mortgagor does business until this Mortgage is fully paid and performed. If this Mortgage is given by a partnership or a trust, Mortgagor shall not, without Mortgagee's prior written permission, add or remove any partners, amend the partnership agreement or dissolve the partnership, or add or remove any trustees, or amend the trust agreement or revoke the trust, as may be applicable, until this Mortgage is fully paid and performed. Mortgagor shall not, without 30 days prior written notice to the Mortgagee, change Mortgagor's name, identity, or ownership. Mortgagor represents and warrants that the execution, delivery, and performance of this Mortgage by Mortgagor or on Mortgagor's behalf is duly authorized by all necessary corporate or partnership action or by all trustees, as appropriate, and does not contravene any articles of incorporation or organization, bylaws, agreements, or trusts, as they may apply to Mortgagor.

13. No Prior Liens: Mortgagor warrants that at the date of this Mortgage, the Vessel is free from all prior liens and encumbrances except for the lien created in Mortgagee's favor to secure the Debt. Neither Mortgagor nor anyone else has or shall have any authority to create, incur, or permit to be placed on the Vessel or any part thereof any lien whatsoever, including any maritime lien, other than to Mortgagee, or for crew's wages or salvage. Mortgagor shall post such notice on the Vessel and Mortgagor shall otherwise give such notice to that effect at such time(s) as Mortgagee may reasonably require. If any maritime lien on the Vessel arises or is claimed, Mortgagor agrees that Mortgagor will, within 30 days from inception of the lien claim, satisfy the lien claim or post adequate security to release the Vessel from the lien claim.

14. Title Warranty: Mortgagor represents and warrants that Mortgagor lawfully owns the whole (100%) of the Vessel. This means that Mortgagor is responsible for Mortgagee's expenses or losses if anyone else successfully claims an interest in the Vessel or any part of it.

15. Risk of Loss: At all times Mortgagor bears the risk of damage to, theft, destruction or other loss of the Vessel. Damage, theft, destruction or other loss of the Vessel will not release Mortgagor from Mortgagor's obligations to Mortgagee. Mortgagor will let Mortgagee know as soon as Mortgagor can, and not later than within 48 hours, if the Vessel becomes damaged, is stolen or destroyed, or disappears.

16. Insurance and Notice of Loss: Until Mortgagor has fully paid the Debt and fully performed the Mortgage, Mortgagor will maintain in full force and effect fire, theft, and "all risk" marine hull and machinery and protection and indemnity insurance on the Vessel, and such other insurance covering such risks and perils, upon such terms and in such amount and with such endorsements as Mortgagee may reasonably require. In addition to protecting Mortgagor, the insurance must protect Mortgagee as a loss payee and as an additional insured (without liability for payment of premium) and must be written for at least one year at a time. The amount of Mortgagor's marine hull and machinery insurance shall not be less than the market value of the Vessel or the unpaid amount of the Debt, whichever is greater (except as otherwise restricted by law). The underwriter and maximum deductible on Mortgagor's insurance must be reasonably satisfactory to Mortgagee. Mortgagee may sign any proof of loss and endorse any check, draft, or other form of payment issued by the insurance company or its agent as a loss payment and Mortgagor hereby appoints Mortgagee as Mortgagor's attorney-in-fact for this purpose. This power of attorney shall not be affected by Mortgagor's disability. Proceeds of the insurance may be used either to repair the Vessel or to reduce the Debt, in Mortgagee's discretion. If Mortgagor's insurance lapses or is canceled at any time before this Mortgage is fully paid and performed, Mortgagee must be given prompt notice of said lapse or cancellation. In the event of lapse or cancellation, or in the event of Mortgagor's failure to pay any premiums when due or otherwise to provide or maintain insurance coverage, Mortgagee may, but is not obligated to, buy replacement coverage protecting Mortgagor and Mortgagee, or Mortgagee alone. Mortgagor will repay the premiums at Mortgagee's request with interest at the rate in effect under the Note.

17. Change of Residence: Mortgagor will notify Mortgagee promptly, not later than within 30 days, if Mortgagor changes Mortgagor's principal residence or principal place of business.



13

18. Use of Vessel: Mortgagor promises that at no time prior to payment of the Debt in full will Mortgagor use the Vessel for any commercial purpose, as Mortgagor's principal dwelling, or for bareboat charter, without Mortgagee's express prior written consent. Unless Mortgagor is in default under this Agreement and Mortgagee exercises any of Mortgagee's remedies upon default, Mortgagor will be permitted to retain actual possession and use of the Vessel. The Vessel may be operated only for pleasure, unless Mortgagee otherwise agrees in writing. The Vessel may be operated only within the geographical limits and other requirements of the marine insurance covering the Vessel. Mortgagor shall not dispose of or transfer the Vessel or any part of Mortgagor's interest in the Vessel, without Mortgagee's prior written permission. Mortgagor shall not use, nor allow the use of, the Vessel for any illegal purpose or contrary to any provision of the laws, treaties, regulations or orders of the United States or other jurisdictions in which the Vessel is operated. The illegal commerce in, or possession, carriage, or use of, any firearms or controlled substance whatsoever on or about the Vessel is absolutely prohibited.

19. Location of Vessel: Mortgagor will not, without Mortgagee's prior written approval, remove the Vessel from its home port or anchorage shown above (except for winter storage) other than for voyages with the intent of returning in less than six months. Mortgagor will inform Mortgagee of any different winter storage location. Mortgagor will not abandon the Vessel.

20. Display of Mortgage on Vessel: Mortgagor will prominently display the marine document and a recorded copy of this Mortgage with the ship's papers in the pilot house, if any, chart room or master's cabin. Mortgagor will show them to all persons having business with the Vessel and to Mortgagee on demand.

21. Charges and Taxes: Mortgagor shall pay when due any lawful repair bills, storage bills, dockage charges, taxes, fines or other charges with respect to the Vessel, its purchase or use. Mortgagee may, but does not commit to, pay any of these charges if Mortgagor does not. If Mortgagee does pay any of these charges, Mortgagor will repay Mortgagee on demand, with interest at the rate in effect under the Note.

22. Care of the Vessel: Mortgagor will keep the Vessel in good condition and repair at all times. Mortgagor shall not, without Mortgagee's prior written consent, make any substantial change or alteration in the Vessel, its structure, rigging, or engines.

23. Seizure: Mortgagor will notify Mortgagee promptly, not later than within 48 hours, by telephone confirmed by telegraph or cable if the Vessel is arrested, libeled, attached, detained, seized or levied upon or taken into custody by any court or other authority, or if Mortgagor becomes aware that any claim of lien upon the Vessel has been filed or prosecuted. Mortgagor will immediately take steps to have the Vessel released, or take such other steps as Mortgagee may reasonably require, including posting bond or security for the Vessel. In the event the Vessel is seized, arrested or detained by any government authority, Mortgagor authorizes Mortgagee to disclose any information which Mortgagee deems necessary to protect Mortgagee's interest in the Vessel and Mortgagor further authorizes Mortgagee or Mortgagee's agents in Mortgagor's name and as Mortgagor's attorney in fact to (i) receive or take possession of the Vessel, and (ii) defend any action and/or discharge any lien, and (iii) refer the protection of the Mortgagee's interest to an attorney not Mortgagee's salaried employee and receive from Mortgagor reasonable attorneys fees. This power of attorney shall not be affected by Mortgagor's disability.

24. Inspection of Vessel and Books: Mortgagor will at all times let Mortgagee inspect the Vessel and its cargoes and papers (including, but not limited to, any relevant certificate of title, license, certificate of documentation or other vessel document, ship mortgage and policy of insurance) and examine Mortgagor's related accounts and records. Mortgagor shall tell Mortgagee quarterly and, if Mortgagee requests, monthly, that all wages and all other claims which might have created a lien on the Vessel have been paid.

25. Reimbursement of Mortgagee: If Mortgagee expends funds for any purpose under this Mortgage (including for the purpose of exercising any of Mortgagee's remedies) or the protection of Mortgagee's interest in the Vessel, such as payment of taxes, insurance premiums, maintenance and repair of the Vessel, or discharge of any lien claim, arrest or seizure of the Vessel, such expenditure will be for Mortgagor's account and Mortgagor will repay to Mortgagee the full amount of such expenditure on demand, with interest at the highest rate applicable to the Debt, and all such unpaid amounts shall constitute an additional part of the Debt secured by this Mortgage until paid in full. Mortgagee is not obligated to make any such expenditure. Any such expenditure Mortgagee may make will not cure Mortgagor's default or waive any of Mortgagee's rights or remedies.

26. Further Assurances: From time to time, Mortgagor shall sign and deliver to Mortgagee any documents and assurances, or complete any markings, that Mortgagee or Mortgagee's attorney may require to obtain and maintain the first priority of this Mortgage and to help Mortgagee carry out a resale or other disposition of the Vessel in the event it becomes necessary for Mortgagee to repossess it, or foreclose Mortgagee's mortgage lien through judicial process. Mortgagor hereby appoints Mortgagee as Mortgagor's attorney-in-fact for all of the foregoing purposes, and this power of attorney shall not be affected by Mortgagor's disability.

27. Financial Reporting: If this Mortgage is given by a business entity, it will give Mortgagee any annual and other periodic financial reports that Mortgagee may reasonably request.

28. Default: Mortgagor will be in default if, at any time, Mortgagor (1) has made a false or misleading statement about any important fact in this Mortgage or in the related Note or application for credit approval; or (2) does not make any payment or pay any other sum when due under the Note or this Mortgage; or (3) breaches any warranty, promise or agreement Mortgagor has made in this Mortgage, the Note, or any other note or security agreement made by Mortgagor in Mortgagee's favor effective now or in the future; or (4) dies or becomes incompetent or otherwise unable to make timely payments of any sum due under the Note or this Mortgage; or (5) becomes insolvent, or (6) files for bankruptcy, receivership, insolvency or similar proceedings, or any assignment for the benefit of creditors, or similar relief, or creditors institute any such proceedings against Mortgagor; or if (7) the Vessel is arrested, attached, levied upon, seized, or made the subject of any legal proceeding, or held by virtue of any lien or distress, or any notice of claim of lien on the Vessel is filed with the U.S. Coast Guard or any other applicable authority; or (8) any other event occurs that Mortgagee in good faith believes endangers Mortgagor's ability to pay any sum due under the Note or this Mortgage; or (9) any other event occurs that Mortgagee in good faith believes jeopardizes or impairs the value of Mortgagee's collateral for Mortgagor's obligations under this Mortgage or Mortgagee's ability to realize that value in a foreclosure. DRAFT NOTE: FOR CORPORATE MORTGAGOR: If this Mortgage is given by a corporation, Mortgagee may also request full payment and foreclose on the Vessel if shares of Mortgagor's capital stock are sold or transferred to anyone who was not a guarantor of the obligation secured by this Mortgage at the time the Note was signed, or if the corporation ceases doing business as a going concern or makes an assignment for benefit of creditors, liquidates substantially all of its assets, or files for dissolution.

29. Remedies Upon Default: If Mortgagor is in default under this Mortgage and/or under the Note, Mortgagee may do any one or more of the following with or without previous notice to Mortgagor or demand for performance, except as may be required by applicable law: (1) require that Mortgagor pay immediately the full unpaid balance of the Debt; (2) set off Mortgagor's liability against or foreclose any funds of Mortgagor's held by Mortgagee in an account of general deposit or other personal property of Mortgagor's held by Mortgagee other than IRA accounts, Keogh pension plan accounts or similar retirement accounts; (3) demand that Mortgagor assemble and deliver the Vessel to Mortgagee at such location as Mortgagee may reasonably require (however, Mortgagor's delivery of the Vessel to Mortgagee will not relieve Mortgagor of Mortgagor's obligation to satisfy any deficiency which may arise upon subsequent sale or other disposition of the Vessel); (4) lawfully enter any premises where the Vessel may be located and repossess the Vessel, together with anything in or on the Vessel, with or without legal process or judicial decree and with or without previous notice or demand for performance; (5) sell or otherwise dispose of the Vessel; (6) bring suit at law, in equity, or in admiralty to foreclose Mortgagee's mortgage lien and/or recover judgment for any and all amounts due under the Note and this Mortgage, and collect the same out of any and all

property covered by this Mortgage; (7) pursue any other remedy provided to Mortgagee under any applicable law; (8) refer this Mortgage to an attorney for collection or enforcement and recover reasonable attorney's fees; (9) require Mortgagor to pay collection, enforcement and court costs, including but not limited to all actual and reasonable costs of foreclosure, enforcement and collection of any amount due and payable under this Mortgage and/or the Note and all actual and reasonable costs and expenses of retaking, maintaining, repairing or rehabilitating, advertising, cleaning, storing or selling the Vessel, to the extent permitted by law. In the case of a judgment, interest on the unpaid balance of the judgment will by payable at the applicable judgment rate or, if permitted by law, at the interest rate applicable to the Debt, at Mortgagee's discretion.

30. Disposition of Vessel; Application of Proceeds: (1) if Mortgagee repossesses the Vessel without judicial process, Mortgagee may, in Mortgagor's name or Mortgagee's name, at Mortgagee's discretion, sell, lease, charter, operate or otherwise use the Vessel as Mortgagee may deem advisable, without being responsible for loss or damage, and Mortgagee may keep the Vessel at Mortgagor's premises or elsewhere, at Mortgagor's expense. For this purpose and subject to any applicable state regulation, Mortgagee and Mortgagee's agents are irrevocably appointed Mortgagor's true and lawful attorneys-in-fact to make all necessary transfers of the Vessel, to pay, defend or obtain the release of all maritime liens, and to take all related actions in Mortgagor's name and stead as may be necessary and appropriate to enforce Mortgagee's rights under this Mortgage or the Note. This power of attorney shall not be affected by Mortgagor's disability. (2) The proceeds of sale or other disposition of the Vessel shall be applied in accordance with applicable law. To the extent permitted by applicable law, any late charges, costs of retaking the Vessel, storage, costs of sale including, but not limited to, cleaning, repairing and/or maintenance expenses, auctioneer's fee, sales commission, if any, and advertising, insurance, allowable attorney's fees, collection costs, court costs, and any other necessary expenses will be paid first from the proceeds of the sale or other disposition of the Vessel. Any surplus of proceeds of sale or disposition of the Vessel over the amounts of such charges and expenses and amounts owed to Mortgagee shall be paid to Mortgagor to the extent that such surplus is not required by law to be paid to other persons with liens on the Vessel. Mortgagor shall be liable for any deficiency.

31. Late Charges and Attorneys' Fees: Mortgagor agrees to pay any late charges that become due under the Note secured by this Mortgage, attorney fees and court costs as allowed in the Note.

32. Reasonable Attorneys' Fees: Whenever under this Mortgage or the Note, Mortgagee is entitled to payment by Mortgagor of Mortgagee's reasonable attorney's fees incurred to enforce Mortgagee's collection rights against Mortgagor, it shall be presumed that 15% of the full amount owed under the Note and this Mortgage shall be reasonable attorney's fees unless otherwise required by applicable law.

33. No Waiver of Rights: Mortgagee may delay in enforcing any of Mortgagee's rights without waiving Mortgagee's right to enforce such rights or any other rights at a later time. Mortgagee's rights and remedies under this Agreement are cumulative and not exclusive. No waiver by Mortgagee of any of Mortgagee's rights will be effective unless in writing and signed by Mortgagee.

34. Receiver: In any legal action, Mortgagee may have a receiver appointed for the Vessel and its earnings. Any receiver shall have full rights and powers to use and operate the Vessel and to obtain a court decree ordering and directing the sale or other disposition of the Vessel.

35. Use of the Vessel by Owner: Unless and until Mortgagor shall become in default of this Mortgage, Mortgagor shall be permitted to retain actual possession and use of the Vessel.

36. Time is of the Essence: Time is of the essence in this Mortgage. This means that all payments which are required must be made on the day due. There are no grace periods provided in this Mortgage.

37. Additional Security: This Mortgage is given as additional security to secure payment of the Debt and performance of the obligations hereunder and under the Note.

38. Governing Law: This Mortgage is made under the laws of the United States and the State of North Carolina and will be governed by the laws of the United States except to the extent that the laws of the United States do not preempt the laws of the State of North Carolina, and to that extent, this Mortgage shall be governed by the laws of the State of North Carolina.

39. Invalid Provisions, Amendment: If any provision of this Mortgage cannot be enforced, the rest of the Mortgage will stay in effect. Any change in the terms of this Mortgage must be made in writing and signed by Mortgagee and Mortgagor.

MORTGAGOR grants the Mortgage described above and agrees to the terms and conditions of this Mortgage. Mortgagor acknowledges a completely filled-in copy of this Mortgage before signing it. As of the day and year written at the beginning of this Mortgage, Mortgagor has executed this Mortgage under Seal, or if a corporation or limited liability company, caused this Mortgage to be signed in the corporate or company name and Sealed by its proper corporate or company officers or members or agents who were duly authorized to do so on behalf of the corporation or company, or if by a partnership, caused this Agreement to be executed under Seal by all of its general partners duly authorized on behalf of the partnership and their own behalf, individually, or if a trust, caused this Agreement to be executed under Seal by all of its trustees on behalf of the trust pursuant to authority granted by the trust.

MORTGAGOR(S):

Gregory A. Strasburg, Trustee of the

Gregory A. Strasburg Revocable Trust

Gregory A Strasburg, Revocable trust (SEAL)
G. [signature]

_______________ Witness

_______________ Witness _______________ (SEAL)

THE FOLLOWING OTHER OWNER(S) JOIN IN GRANTING THIS PREFERRED MORTGAGE TO MORTGAGEE AND AGREE TO THE TERMS AND CONDITIONS OF THIS PREFERRED MORTGAGE

OTHER OWNER #1:

_______________ Witness _______________ (SEAL)

OTHER OWNER #2

_______________ Witness _______________ (SEAL)

ACKNOWLEDGMENT
STATE OF: CALIFORNIA
COUNTY OF: SAN FRANCISCO

(Individual Mortgagor)
I HEREBY CERTIFY that on this ______day of ______________, 200___ , before me, a Notary Public, personally appeared, Gregory A. Strasburg (known to me or satisfactorily proven) who acknowledged that he/she/they executed the foregoing document (First Preferred Ship Mortgage) of his/her/their own free act and deed for the uses and purposes set forth.

(Corporate Mortgagor)
I HEREBY CERTIFY that on this ______day of ______________, 200___ , before me, a Notary Public, personally appeared, (Corporate Mortgagor), who being duly sworn, deposed and said he/she is the (Title) of (Corporate Name), the corporation which is described in and which executed the foregoing instrument and by order of the Board of Directors for this corporation he/she signed his/her name hereto and acknowledged it to be the free act and deed of said corporation

(Other Owner(s))
I HEREBY CERTIFY that on this 9 day of FEBRUARY, 2004, before me, a Notary Public, personally appeared, (Print Other Owner Name) (known to me or satisfactorily proven) who acknowledged that he/she/they executed the foregoing document (First Preferred Ship Mortgage) of his/her/their own free act and deed for the uses and purposes set forth.

IN WITNESS WHEREOF, I HEREUNTO SET MY HAND AND OFFICIAL SEAL.

Susan Loughridge (SEAL)
Notary Public

My Commission Expires: 7-18-05

SUSAN LOUGHRIDGE
COMM. # 1309696
NOTARY PUBLIC • CALIFORNIA
SAN FRANCISCO COUNTY
Comm. Exp. JULY 18, 2005

WACHOVIA

# Irrevocable Limited Power of Attorney

In the following paragraphs, the words 'I', "me" and "my" refer to all parties who sign below as owner.

I, THE GREGORY A. STRASBURG REVOCABLE TRUST, by executing this Power of Attorney appoint any Vice President of Wachovia Bank, N.A., and/or NIKKI TOMPKINS as my true and lawful attorney-in-fact with full right of substitution, to act for me and in my name to perform the following acts as if I had performed them myself. This Power of Attorney cannot be revoked by me once the related loan has been funded.

1. APPROVE, DATE, SIGN AND DELIVER DOCUMENTS: To approve, date, sign, seal and deliver to Wachovia Bank, N.A. or its assigns, for me, ☒a first preferred ship mortgage or, ☐ an amendment to a first preferred ship mortgage (the "Mortgage") with respect to the following described yacht (the "Vessel"):

Manufacturer: QUEENSHIP
Manufacturer's Hull No.: QCWGK115M001
Vessel Name: JUST A NOTION

Year Built: 1999
C.G. #:1089525
☐ Present or ☒ Proposed)

2. OFFICIAL NUMBER AND TONNAGE: To insert the Official Number and/or Hull Identification Number of the Vessel and her gross and net tonnage and any other necessary information in the Mortgage before its execution and delivery.

3. ACKNOWLEDGMENT, RECORDING AND ENDORSEMENT: To sign, acknowledge, record and deliver any other applications, certificates, affidavits and instruments required by the United States or by any jurisdiction where the Vessel is to be registered or kept relating to documentation, registration and security interest or mortgage lien perfection.

4. OTHER DOCUMENTS: To sign, acknowledge, record, deliver, and obtain any other certificates, endorsements, affidavits, cruising permits, and instruments required by any jurisdiction where the vessel is to be registered or kept.

5. OTHER ACTS: To perform any and all acts determined to be necessary by my attorney-in-fact or required by Wachovia Bank, N.A. or the United States Coast Guard in connection with the documentation of the Vessel and the execution, delivery, filing, and recordation of a preferred mortgage on the Vessel and in connection with the registration of the Vessel in any state, and the perfection of a security interest in the Vessel in favor of Wachovia Bank, N.A. or assigns, including the marking and documentation of the Vessel, the preparation, execution, acknowledgment, and delivery of all documents, forms, letters, certificates, and related instruments for those purposes. This power of attorney shall not be affected by my disability.

6. APPOINTMENT BY CORPORATION: To act (if the attorney-in-fact has been appointed by a corporation) on behalf of the corporation in lieu of any other authorized officers and signatures. The corporation's attorney-in-fact will have the power to place the corporate seal on any document executed under this power of attorney. This appointment has been authorized and directed by vote of all or a majority of the members of the board of directors of the corporation.

OWNER(S):

THE GREGORY A. STRASBURG REVOCABLE TRUST

/s/ [signature], Trustee (SEAL)

GREGORY A. STRASBURG, TRUSTEE

______________________ Witness

______________________ Witness

______________________ (SEAL)



17

## ACKNOWLEDGMENT

STATE OF: CALIFORNIA

COUNTY OF: SAN FRANCISCO

(Individual Owner) ✓

I HEREBY CERTIFY that on this 9 day of FEBRUARY, 2004, before me, a Notary Public, personally appeared, GREGORY A. STRASBURG (known to me or satisfactorily proven) who acknowledged that he/she/they executed the foregoing document (First Preferred Ship Mortgage) of his/her/their own free act and deed for the uses and purposes set forth.

(Corporate Owner)

I HEREBY CERTIFY that on this ______ day of ____________, 200__, before me, a Notary Public, personally appeared, , who being duly sworn, deposed and said he/she is the of , the corporation which is described in and which executed the foregoing instrument and by order of the Board of Directors for this corporation he/she signed his/her name hereto and acknowledged it to be the free act and deed of said corporation

IN WITNESS WHEREOF, I HEREUNTO SET MY HAND AND OFFICIAL SEAL.

Susan Loughridge (SEAL)
Notary Public

My Commission Expires: 7-18-05

SUSAN LOUGHRIDGE
COMM. # 1309696
NOTARY PUBLIC • CALIFORNIA
SAN FRANCISCO COUNTY
Comm. Exp. JULY 18, 2005

EXHIBIT C

03/11/2008 00:36 9495665[redacted] DANBELL PAGE 02/05
TO:9495669506 P.2/5
MAR-12-2008 11:23 FROM:

DEPARTMENT OF TRANSPORTATION
U.S. COAST GUARD
CG-1332 (REV. 6-83)

# GENERAL INDEX OR ABSTRACT OF T..LE

OMB APPROVED 2115-0110

VESSEL BUILT AT MAPLE RIDGE, B.C., CANADA
(AND) ______ IN 1999
BY QUEENSHIP ADMIRALTY CONSTRUCTION LTD.
FOR JAMKB, LLC
BUILDER'S CERTIFICATE DATED 11/12/99
TITLE ASSIGNED TO NA

1089525 (OFFICIAL NUMBER)
* ~~QCWGK1120BE~~ (HULL ID NUMBER)
(5) *QCWGK115M00I
(4)
(3)
(2)
(1) JUST A NOTION
NAME OF VESSEL
*Corrected at NVDC 5/14/04

| INSTRUMENT | % CONVEYED | DATE | AMOUNT | BOOK | PAGE |
|---|---|---|---|---|---|
| BS | 100 | 7 13 00 | $1.00 | 00-85 | 106 |

| FILED PORT | DATE | TIME | DATE TERMINATED |
|---|---|---|---|
| NVDC | 7 24 00 | 7 20 AM | - - - |

GRANTOR
JAMKB, LLC

GRANTEE
Stephen P. Katz

| INSTRUMENT | % CONVEYED | DATE | AMOUNT | BOOK | PAGE |
|---|---|---|---|---|---|
| | | | | | |

| FILED PORT | DATE | TIME | DATE TERMINATED |
|---|---|---|---|
| | | | |

GRANTOR

GRANTEE

| INSTRUMENT | % CONVEYED | DATE | AMOUNT | BOOK | PAGE |
|---|---|---|---|---|---|
| | | | | | |

| FILED PORT | DATE | TIME | DATE TERMINATED |
|---|---|---|---|
| | | | |

GRANTOR

GRANTEE

☐ ISSUED AS AN ABSTRACT OF TITLE ☐ ISSUED FOR CHANGE OF PORT OF RECORD

DATE: TIME:
PAGE: OF PORT:

DOCUMENTATION OFFICER

PREVIOUS EDITION MAY BE USED

PAGE:001 R=93%
MAR-12-2008 10:43AM FAX:UDS_FAX ID:
NO. 3270 P. 3 MAR. 12. 2008 4:02PM

19

JAMES W. ALCANTARA - State Bar No.: 152747
Alcantara & Associates, APC
402 West Broadway, Suite 1170
San Diego, California 92101
Telephone: (619) 233-5900
Facsimile: (619) 233-5999
Email: jima@alcantaraassociates.com

Attorneys for Plaintiff Gregory A. Strasburg, Individually and as Trustee of the Gregory A. Strasburg Revocable Trust dated 4/8/2003

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY A. STRASBURG, Individually and as Trustee of the GREGORY A. STRASBURG REVOCABLE TRUST dated 4/8/2003<br><br>Plaintiff,<br><br>v.<br><br>*M/Y JUST A NOTION*, Official Number 1089525, her engines, tackle, furniture and appurtenances, *in rem*; PETER BLAIR, *in personam*; JIM SINGLETON, *in personam*; and THE YACHT CLUB, LLC., a Nevada Corporation<br><br>Defendants. | CASE NO. 08CV21 JLS (BLM)<br><br>IN ADMIRALTY<br><br>ORDER APPOINTING NEW SUBSTITUTE CUSTODIAN AND AUTHORIZING MOVEMENT OF DEFENDANT VESSEL<br><br>Federal Rules of Civil Procedure Supplemental Rules for Certain Admiralty and Maritime Claims, Rules C and D |

Plaintiff GREGORY A. STRASBURG, individually and as Trustee of the GREGORY A. STRASBURG REVOCABLE TRUST dated 4/8/03 (hereinafter referred to as "PLAINTIFF") by and through his attorney of record, James W. Alcantara, Esq. of Alcantara & Associates, APC., having appeared and made the following recitals:

1. On or about January 3, 2008, the Complaint herein was filed praying that the Defendant vessel, *M/Y JUST A NOTION* and her engines, tackle, apparel, furnishings, equipment, accessories, appurtenances, etc., and all other necessaries thereunto appertaining and belonging (hereinafter referred to as "DEFENDANT VESSEL"), be arrested and ordered into the custody of the Substitute Custodian – Driscoll's Wharf.

Alcantara & Associates, APC
402 West Broadway, Suite 1170
Emerald Plaza Building
San Diego, California 92101
(619) 233-5900 Fax: (619) 233-5999



22

**by the parties and (2) SHALL SUBMIT, through counsel, a list of "specialized maintenance items" required for the DEFENDANT VESSEL to maintain its value during the pendency of this litigation. The parties SHALL CONTACT Magistrate Judge Barbara L. Major to resolve any disputes regarding the removal of personal items or the maintenance of the DEFENDANT VESSEL during this litigation.**

DATED: February 5, 2008

Janis L. Sammartino

Hon. Janis L. Sammartino
HONORABLE JUDGE OF THE
UNITED STATES DISTRICT COURT

Alcantara & Associates, APC
402 West Broadway, Suite 1170
Emerald Plaza Building
San Diego, California 92101
(619) 233-5900 Fax: (619) 233-5999

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

ORIGINAL

08 JUN -6 PM 4:02

**I. (a) PLAINTIFFS**
WACHOVIA BANK, N.A.

**(b)** County of Residence of First Listed Plaintiff: San Bernardino
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Thomas A. Russell, Esq., RUSSELL & ASSOCIATES, 833 Dover Dr., Suite 15, P.O. Box 11466, Newport Beach, CA 92658; (949) 244-6230

**DEFENDANTS**
M/Y JUSTA NOTION, in rem; GREGORY A. STRASBURG, as Trustee of the THE GREGORY A. STRASBURG REV. TRUST

County of Residence of First Listed Defendant: San Diego
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

DEPUTY

'08 CV 1023 JAH AJB

Attorneys (If Known)
James W. Alcantara, Esq., ALCANTARA & ASSOCIATES, APC
402 W. Broadway, Suite 1170, San Diego, CA 92101

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☒ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence

Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

**V. ORIGIN** (Place an "X" in One Box Only)

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ 6 Multidistrict Litigation ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (**Do not cite jurisdictional statutes unless diversity**):
46 USC 31325(b)(1); F.R.C.P. Supplemental Rules for Certain Admiralty and Maritime Claims, Rule C

Brief description of cause:
Foreclosure of Preferred Ship Mortgage; demand in excess of $550,000

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 **DEMAND $**
CHECK YES only if demanded in complaint: **JURY DEMAND:** ☐ Yes ☒ No

**VIII. RELATED CASE(S) IF ANY** (See instructions): JUDGE Janice L. Sammartino DOCKET NUMBER 08CV21 JLS (BLM)

DATE: June 6, 2008 SIGNATURE OF ATTORNEY OF RECORD: [signature]

**FOR OFFICE USE ONLY**

RECEIPT # 151717 AMOUNT $350 APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______

JAC 6/6/08

JS 44 Reverse (Rev. 11/04)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I. (a) **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II. Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III. Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV. Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V. Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI. Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553
Brief Description: Unauthorized reception of cable service

**VII. Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII. Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

UNITED STATES
DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

# 151717 - TC

June 06, 2008
16:09:59

Civ Fil Non-Pris
USAO #.: 08CV1023
Judge..: JOHN A HOUSTON
Amount.: $350.00 OC
Check#.: BC300768572

Total-> $350.00

FROM: WACHOVIA BANK
VS
GREGORY A. STRASBURG