1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

# SOUTHERN DISTRICT OF CALIFORNIA

10
11

WACHOVIA BANK, N/A,

12

Plaintiff,

vs.

13
14

M/Y JUST A NOTION; GREGORY A. STRASBURG,

15

Defendant.

16

CASE NO. 08 CV 1023 JLS (BLM)

**ORDER: (1) DENYING CLAIMANTS' THIRD PARTY CLAIMS OF RIGHT; (2) DENYING PETER BLAIR'S MOTION TO INTERVENE**

(Doc. No. 31, 32, 33, 47.)

17
18
19
20
21
22
23
24
25
26
27
28

On April 1, 2010, Claimants Peter Blair, James Singleton, and David Moniz filed separate petitions for hearing on third party claims of right to the vessel M/Y Just a Notion.  (Doc. Nos. 31, 32, 33.)  A hearing on all three petitions was held on April 15, 2010.  The Court thereafter lifted the stay placed on the sale and transfer of the vessel as a result of these petitions, confirmed the sale, and requested further briefing regarding the issue of priority of third party claim of rights.  (Doc. No. 47.)  In compliance with the Court's order, on April 26, 2010, Plaintiff Wachovia Bank and Defendant Gregory Strasburg filed a joint response (Doc. No. 54), Peter Blair filed a response (Doc. No. 55), and James R. Singleton filed a response.  (Doc. No. 56.)  Claimant David Moniz did not file a response.

Shortly after this Court's order, on April 19, 2010, Peter Blair filed a motion to intervene.  (Doc. No. 49.)  Pursuant to this Court's Order, Wachovia Bank and Strasburg timely filed a joint response in opposition. (Doc. Nos. 51, 58.)

For the reasons discussed below, the Court **HEREBY DENIES** Claimants Peter Blair, James Singleton, and David Moniz's third party claims and **DENIES** Peter Blair's motion to intervene.

# BACKGROUND

This case was filed on June 6, 2008 by Wachovia Bank against Gregory Strasburg, the trustee of M/Y Just a Notion (the "vessel"). Wachovia filed the complaint seeking foreclosure of the vessel. (1023 Compl. ¶ 1.) In February 2004, Wachovia and Strasburg executed a Note in the amount of $680,000 plus interest and other expenses and a Mortgage which secured the obligations of the Note. (*Id.* ¶¶ 5, 6.) The mortgage constitutes a lien on the vessel in the amount of the outstanding Note and Mortgage indebtedness. (*Id.* ¶ 8.) The complaint alleges that Strasburg defaulted under the Note and Mortgage and therefore Wachovia is entitled to foreclosure. (*Id.* ¶ 9.) The complaint notes that the Yacht Club LLC purports to claim a preferred mortgage on the vessel and that David Moniz, Kim Warner, Peter Blair, James Singleton, Rob La Brech and the Yacht Club LLC all have recorded unexpired notices of claims of undischarged liens on the Vessel. (*Id.*)

On April 7, 2009, Wachovia and Strasburg signed a stipulated judgment that Wachovia issued the Note and Mortgage and therefore has a security interest in the vessel. (Doc. No. 22 at ¶¶ 5-6.) The stipulated judgment also states that Strasburg and the Strasburg Trust materially defaulted under the Note and Mortgage.

> Among the defaults, Strasburg and Strasburg Trust have (i) purported to convey ownership and/or mortgage interests in the vessel to others, creating a dispute over title to the vessel, (ii) allowed notices of claims of lien against the vessel presently on file with the Coast Guard and has not yet removed such notices although they are disputed, and (iii) caused the maritime arrest of the vessel, among other defaults.

(*Id.* ¶ 7.) The stipulated judgment ordered that, upon any of these defaults, Wachovia may require the vessel, Strasburg and Strasburg Trust to pay the balance owed to Wachovia in full, bring suit to foreclose, and to pay all related costs. (*Id.* ¶ 8.) Thus, the stipulated judgment awarded payment of $555,110.7 to Wachovia as of February 27, 2009 plus interest. (*Id.* ¶ 9.)

The stipulated judgment also states that the "Mortgage is senior, prior and superior to all other interests, liens or claims of whatsoever nature against the Vessel" and that all proceeds from the foreclosure sale first go to Wachovia. (*Id.* ¶ 14.) Further, the judgment notes that there is a related action, 08cv21, but that the time to file a claim in the present action had expired under Rule C(6)(a) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal

1    Rules of Civil Procedure.  (*Id.* ¶ 12.)

2         Along with the stipulated judgment, the Court signed an Order of Sale of the vessel,

3    condemning the vessel to be sold by the US Marshal within thirty days.  (Doc. No. 23.)  The vessel

4    was to be sold in accordance with the Marshal's rules and regulations governing such sales, and

5    then the parties were to notify the Court when the sale was complete and the litigation otherwise

6    concluded.  (*Id.*)

7         After various stays of the sale of the vessel, on April 1 and 2, 2010, Peter Blair, David

8    Moniz, and James Singleton filed third party claims of right in an effort to once again prevent the

9    sale, which was scheduled to take place that Friday, April 2, 2010.  The Court again stayed the sale

10   of the vessel, set a briefing schedule, and scheduled a hearing for April 15, 2010.  (Doc. No. 38.)

11   Gregory Strasburg and Wachovia Bank filed a response in opposition to the third party petitions

12   on April 12, 2010.  (Doc. No. 40.)  The hearing took place as scheduled and thereafter the Court

13   found no basis to continue the stay of the sale of the vessel and no basis for injunctive relief, as all

14   matters were financial and would not result in irreparable harm, and therefore lifted the stay and

15   confirmed the sale of the vessel for $650,000.00.  (*See* Doc. Nos. 47, 53.)  However, despite the

16   sale, the issue remained as to the priority of the claimed third party rights, especially in light of the

17   stipulated judgment.  Thus, the Court ordered all parties and Claimants to file supplemental

18   briefing on these issues.  (Doc. No. 47.)  The parties and Claimants, except for David Moniz, filed

19   said briefs on April 26, 2010.  (Doc. Nos. 54, 55, 56.)

20                                          **DISCUSSION**

21        Three individuals filed third party claims of right ("COR") in this case: Peter Blair, James

22   Singleton, and David Moniz.  (Doc. Nos. 31, 32, 33.)  Peter Blair claims that he "acquired

23   maritime lien rights for labor and services performed on the Vessel, repairs, materials, cure and

24   improvements on the Vessel" which he believes gives him priority over Wachovia's preferred ship

25   mortgage liens.  (Blair COR at 1 (citing *United States v. 254 Foot Freighter M/V Andoria*, 570 F.

26   Supp. 413, 415 (E.D. La 1983); *United States v. ZP Chandon*, 889 F.2d 233, 237 (9th Cir. 1989).)

27   He claims that the fair market value of his property is approximately $581,360.00 under the Lien

28   Notice dated December 20, 2007.  (Blair COR at 2.)  James Singleton's COR is essentially the

same as Blair's, but claims an interest in the amount of $180,000 pursuant to the same Lien Notice.  (Doc. No. 32.)  The same applies to David Moniz's COR, but he claims approximately $165,533.00 pursuant to the Lien Notice.  (Doc. No. 33.)

**I.     Third Party Claims**

All three third party claims were filed pursuant to California Code of Civil Procedure.  (*See* Doc. Nos. 31, 32, 33.)  However, Wachovia and Strasburg assert that any third party claims must be filed pursuant to Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Supp. Rules").  The Court agrees.

This action is clearly an admiralty and maritime claim under FRCP 9(h) which this Court has jurisdiction of under 46 U.S.C. § 31325 and 28 U.S.C. §§ 1331 and 1333.   Rule 9(h) provides:

> If a claim for relief is within the admiralty or maritime jurisdiction and also within the court's subject-matter jurisdiction on some other ground, the pleading may designate the claim as an admiralty or maritime claim for purposes of . . . the Supplemental Rules for Admiralty or Maritime Claims. . . . A claim cognizable only in the admiralty or maritime jurisdiction is an admiralty claim or maritime claim for those purposes, whether or not so designated.

Fed. R. Civ. P. 9(h).  Supplemental Rule A states that the scope of the supplemental rules apply to "the procedure in admiralty and maritime claims within the meaning of Rule 9(h) with respect to . . . (i) maritime attachment and garnishment, (ii) actions in rem, (iii) possessory, petitory, and partition actions . . ." Supp. Rule A(1)(A).

Further, the Ninth Circuit, albeit in a different context, has recognized that "[t]he Federal Rules of Civil Procedure apply irrespective of the source of subject matter jurisdiction, and irrespective of whether the substantive law at issue is state or federal."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102 (9th Cir. 2003); *see also United States v. ZP Chandon*, 869 F.2d 233, 237 (recognizing that "in determining whether seamen have a lien priority over the claims of all other creditors, we must look to admiralty and maritime law, not the law that governs transactions occurring on land").

The Second Circuit has explicitly held that the Supplemental Maritime Rules preempt a conflicting New York statute.  *See Aurora Maritime Co. v. Abdullah Mohamed Fahem & Co.*, 85 F.3d 44, 47-49 (2nd Cir. 1996) ("The issue presented by this case is whether Section 151 invests a garnishee with a lien senior to a Rule B attachment.").  The court held that maritime attachment as

set forth in Supplemental Rule B preempts New York's Section 151 set-off provision. *Id.* The court found that "Section 151 . . . materially interferes with important purposes, and reduces the effectiveness of maritime law." *Id.* at 48; *see also id.* ("Permitting Section 151 set-off rights to displace an existing Rule B attachment would, therefore, undermine the consistent nationwide application of Rule B, resulting in a concomitant decline in the usefulness of admiralty law to the maritime community.")

The Second Circuit opinion, however, is not entirely instructive as it involved maritime attachment and not third party claims as set forth in Supplemental Rule C.  However, the history of maritime law illustrates the importance of maintaining uniformity of maritime liens and their priority.  (*See* Opp. at 6 n.5.)  As the Fifth Circuit sitting en banc explains, "the Ship Mortgage Act, when read together with the statues delineating the judicial sale procedure in the federal courts forms a comprehensive procedure for the foreclosure of a preferred ship's mortgage, the sale of the vessel and any resulting deficiency adjudged against the debtor *in personam*." *J. Ray McDermott & Co. v. Vessel Morning Star*, 457 F.2d 815, 818 (5th Cir. 1972).  The court emphasized "[t]he need for exclusive jurisdiction of the admiralty court and uniformity of procedure in ship mortgage foreclosure proceedings." *Id.* at 817.

Third party practice under California law is inconsistent with the procedures set forth in the Supplemental Rules, *see* California Code of Civil Procedure § 720.110 *et seq.*, and would undermine the uniformity in making claims and determining lien priorities upon ship foreclosure.  Thus, the Supplemental Rules control the procedure for asserting the third party claims and therefore Claimants' reliance on California law is misplaced.

Supplemental Rule C provides: "a person who asserts a right of possession or any ownership interest in the property that is subject to the action must file a verified statement of right or interest: (A) within 14 days after the execution of process or (B) within the time that the court allows." Supp. Rule C(6)(a)(1); *see also* Local Civil Rule C (requiring claims to be filed and served within 14 days after publication).  Claimant Peter Blair, however, argues that Supplemental Rule E(4)(f) controls.  This Rule provides that "[w]henever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be

required to show why the arrest or attachment should not be vacated or other relief granted

consistent with these rules." Supp. Rule E(4)(f).  Rule E was intended to supplement Rules B, C,

and D.  Supp. Rule E(1).  Under both Rule C and Rule E, the Court finds that Claimants have not

timely and properly asserted a third party claim of right.

On July 1, 2008, Wachovia arrested the vessel while it was under arrest in the related case

and thus all Claimants, as parties in the related case, received notice of arrest.  Further, Wachovia

provided notice pursuant to Supp. Rule C(4).  (*See* Doc. No. 8.)  On October 31, 2008, Magistrate

Judge Major conducted a Case Management Conference in this case at the same time as the Early

Neutral Evaluation Conference in the related case.  (*See* Doc. No. 15; *see also* 08cv21, Doc. No.

47.)  Then, again in December 2008, Magistrate Judge Major conducted the settlement conference

in both cases simultaneously.  (Doc. No. 20; *see also* 08cv21, Doc. No. 54.)  Furthermore, the

deposition of Mr. Singleton was taken in both cases on the same date, February 3, 2009.[1]  The

stipulated judgment was not signed by this Court until April 7, 2009.

Despite the notice regarding the litigation between Wachovia and Strasburg, Claimants did

not file a verified statement of right or interest against Wachovia pursuant to the Supplemental

Rules.  Nor did they challenge Wachovia's interest or priority.  In fact, since the stipulated

judgment was entered, Claimant Peter Blair in the related case sought a continuance on the basis

that the stipulated judgment and sale of the vessel would impact the issues in that case.  (*See*

08cv21, Doc. No. 66.)  Despite this, Claimants filed a third party claim of right over a year after

they had notice of the action between Wachovia and Strasburg, Wachovia's mortgage and claimed

interest, and the stipulated judgment asserting Wachovia's priority.  Further, at the hearing

conducted pursuant to the petitions, Claimants made no showing as to why the arrest should be

vacated or the sale otherwise stayed, as all issues before the Court were financial matters which

would not result in irreparable harm.[2]  Moreover, the sale of the vessel has been confirmed and the

[1] The record is unclear whether the Blair himself attended any of these meetings.  However, Blair was represented by counsel and therefore his attorney's presence is sufficient to establish notice.

[2] Even to the extent Blair was asserting that personal property remained on the vessel, which was later rejected by the magistrate judge in the related case, this could be corrected by monetary judgment and therefore did not constitute irreparable harm.

property has been transferred.  As such, the relief provided by Rule E, vacating the arrest, is unavailable and the Court finds no other relief is warranted sufficient to permit Claimants' petition.  As such, the Court finds that all claims are untimely and that no good cause exists to permit such a claim at this late stage in the litigation.  The Court therefore denies all three Claimants' petition for third party claims of right as untimely pursuant to the Federal Supplemental Rules of Procedure.

Furthermore, even if the Court were to consider the third party claims on the merits, the Court would find that Claimants have not asserted preferred maritime liens which would have priority over Wachovia's preferred mortgage lien.[3]  *See* 46 U.S.C. §§ 31325(a), 31326(b)(1), 31301(5).  Claimants are admittedly engaged in a business venture along with Strasburg in the operation of the vessel and thus they are not entitled to crew wage liens pursuant to their work aboard the vessel.[4]  *See Medina v. Marvirazon Compania Naviera, S.A.*, 709 F.2d 124, 125 (1st Cir. 1983) ("Corporate officers, general managers, and others are denied liens when they have considerable authority over the vessel such that they are in a similar position to the owner and there would be "insuperable legal difficulties in the enforcement of [the lien], or because-on the grounds similar to estoppel-to recognize it would be inequitable to other claimants." (citation and quotation omitted)); *Security Pacific Nat'l Bank v. O/S Pacific Pride*, 549 F. Supp. 53 (W.D. Wa. 1982) ("[T]he law is clear that owners, part owners, joint venturers and stockholders cannot have a valid maritime lien on any vessel in which they own an interest."); *Fulcher's Point Pride Seafood, Inc. v. M/V Theodora Maria*, 935 F.2d 208, 211-12 (11th Cir. 1991) (recognizing that joint venturers are not entitled to maritime liens and explaining the factors the Court looks to in order to determine  whether a joint venture exists).

Claimants have also not established that they are entitled to preferred maritime liens for damage arising out of maritime tort.  *See* 46 U.S.C. § 31301(5)(B).  Here, a maritime lien arising out of tort was first mentioned at oral argument and the purported tort complained of is not clear.

---

[3] There is no dispute that Wachovia's mortgage constitutes a preferred mortgage lien.  *See* 46 U.S.C. § 31321(a) and (b).

[4] (*See, e.g.*, Doc. No. 49-3, 3:15-22; Doc. No. 55 at 4 (referring to all purported actions by the "crew" taken to further "the company"); *see also* Exhibits to Doc. Nos. 31, 32, 33.)

1  Blair's supplemental brief does not help clarify, as the Court requested.  Blair asserts:

2          In The Henry W. Breyer, (170 U.S. 113, 18 S.Ct., 544, 42 L.Ed. 969 (1898)) the court held
           that cargo claims both unpaid freight and for damages to the goods could be stated in tort

3          and therefore gave rise toa preferred maritime lien with priority over the mortgage.

4  (Doc. No. 55 at 5.)  This citation, however, is a citation to case entitled *The John G. Stevens*.  *The*

5  *Henry W. Breyer* case which the Court believes Blair refers to is found at 17 F.2d 423 (D. Md.

6  1927).  Regardless, neither case supports Blair's entitlement to a preferred maritime lien for

7  damages arising out of a tort under the facts of this case.  These cases state that the claim of an

8  owner of cargo damaged during maritime transport could sound in tort sufficient to give rise to a

9  maritime lien.  *See The John G. Stevens*, 170 U.S. at 125; *The Henry W. Breyer*, 17 F.2d at 429;

10  *see also Assoc. Metals and Minerals Corp. v. Alexander's Unity MV*, 41 F.3d 1007, 1012-13 (5th

11  Cir. 1995).  These cases deal with damage to cargo transported on the vessel and tort claims

12  arising out of breach of contract or other implied duty or allegations of fraud.  The facts of the

13  case(s) cited by Blair, therefore, are not applicable to the present case and do not establish what, if

14  any, tort claim Claimants assert give them priority over Wachovia's mortgage.

15          Finally, Blair's response to this Court's request for further briefing on whether Claimants

16  are entitled to any other preferred maritime liens does not establish any valid preferred maritime

17  liens.  Blair cites to numerous cases, many of which relate to his wage crew lien claim already

18  rejected by this Court, and many others that do not establish any preferred maritime liens.  (*See*

19  Doc. No. 55 at 5-7.)

20          As such, even if the Court were to find that Claimants procedurally complied with the

21  requirements set forth in the Supplemental Federal Rules, which it does not, Claimants have not

22  asserted valid preferred maritime liens sufficient to give them priority over Wachovia's preferred

23  mortgage.  For those reasons, Claimants' third party claims are **DENIED.**  Instead, all proceeds

24  will be distributed or held in accordance with the stipulated judgment pending disposition in the

25  related case.[5]

26  ────────────────

27          [5]  Claimant Singleton is represented by counsel in the related action, yet filed his third party
       claim pro se.  As indicated at oral argument, Claimant Singleton now clarifies that he does not seek

28  priority of his claims over Wachovia Bank, though he asserts priority over Claimants Blair and Moniz
       in the related action pursuant to an addendum to the LLC operating agreement.  (*See* Doc. No. 56 at
       1-3.)  As such, Singleton asserts that, in the event Blair or Moniz prevail in asserting priority claims,
       all amounts awarded to them shall be held pending disposition in the related case, 08cv21.  The Court

1

### III.    Motion to Intervene

2

In addition to his petition for third party claim of right, Peter Blair has filed a motion to

3

intervene pursuant to Federal Rule of Civil Procedure 24.  (Doc. No. 49.)  Rule 24 provides:

4

> On timely motion, the court must permit anyone to intervene who . . . claims an interested
> to the property or transaction that is the subject of the action, and is so situated that
> disposing of the action may as a practical matter impair or impede the movant's ability to
> protect its interest, unless existing parties adequately represent that interest.

5

6

Fed. R. Civ. P. 24(a)(2).  The basis for Blair's motion is less than clear, but appears to be that

7

Blair's personal property remains on board the vessel and that he made mortgage payments and

8

supplied crew labor.  (*See* Mem. ISO Motion, Doc. No. 49, at 2.)

9

In opposition, Wachovia and Strasburg assert that Blair's application to intervent is

10

untimely and that intervention would cause unreasonable delay, prejudice the parties, and

11

undermine the orderly administration of justice.  Furthermore, Wachovia and Strasburg argue that

12

intervention will not serve to protect Blair's interest.  The Court agrees and therefore denies Peter

13

Blair's motion to intervene.

14

First, the Court finds that Blair's motion to intervene is untimely.  *See* Fed. R. Civ. P.

15

24(a); *see also* Supp. Rule A(2) (stating that the the Federal Rules of Civil Procedure apply

16

"except to the extent they are inconsistent with these Supplemental Rules").  The burden is on

17

Blair to show that such intervention is timely.  *Petrol Ships Northwest v. Continental Oil Co.*, 647

18

F.2d 1005, 1010 n.5 (9th Cir. 1981).  "In determining whether a motion for intervention is timely,

19

[the Court] consider[s] three factors: (1) the stage of the proceeding at which an applicant seeks to

20

intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay."

21

*League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997) (quotations

22

and citations omitted).  "[A]ny substantial lapse in time weighs heavily against intervention."  *Id.*

23

(quoting *United States v. Washington*, 86 F.3d 1499, 1503 (9th Cir. 1996)).

24

Blair filed his present motion to intervene on April 19, 2010, nearly two years after

25

Wachovia filed its complaint and arrested the vessel.  Blair, as a party in the related action, not

26

only knew about this litigation, but was directly involved in this litigation regarding the

27

28

notes Singleton's new position.  However, given that none of the Claimants' third party claims are
recognized, Singleton's request is moot.  All issues of priority as claimed in the related case remain
to be determined.

08cv1023

1    combination to the safe aboard the vessel in May of 2009 and filed also filed an ex parte motion in

2    the related case to stay the sale of the vessel pursuant to the Court's order in this case in October

3    2009. (*See* Doc. No. 27, 29; *see also* 08cv21, Doc. No. 77.)  As such, the present motion to

4    intervene is filed nearly 2 years after the litigation commenced and almost a year after he was

5    directly involved in the litigation.  The Court finds such a delayed motion untimely pursuant to

6    Rule 24.

7          Furthermore, in considering timeliness, the Court may evaluate the prejudice to existing

8    parties.  *See League of United Latin Am. Citizens*, 131 F.3d at 1302; *see also Petrol Ships*

9    *Northwest*, 647 F.2d at 1010.  Here, the prejudice would be great.  The parties have already

10   entered into a stipulated judgment which the Court signed and the sale of the vessel has taken

11   place and been confirmed by the Court.  "Postjudgment intervention is generally disfavored

12   because it creates 'delay and prejudice to existing parties.'" *Calvert v. Huckins*, 109 F.3d 636, 638

13   (9th Cir. 1997) (quoting *United States v. Yonkers Bd. of Educ.*, 801 F.2d 593, 596 (2d Cir. 1986);

14   *see also Ragsdale v. Turnock*, 941 F.2d 501, 504 (7th Cir. 1991) ("The prejudice to the present

15   parties of a grant of intervention (factor 2) is obvious and substantial. After pursuit of litigation for

16   several years, they expended great effort in working out a settlement to which the proposed

17   intervenors are opposed. Once parties have invested time and effort into settling a case it would be

18   prejudicial to allow intervention.").  In fact, the sale of the vessel, which was originally set to take

19   place prior to May 7, 2009, has been stayed more than once due to Peter Blair's efforts though the

20   Court ultimately rejected the underlying claims for which the Court stayed the proceedings and

21   lifted the stay.[6]  (*See* Doc. Nos. 38, 47; *see also* 08cv21, Doc. Nos. 77, 96.)  Thus, the parties have

22   already been prejudiced by delay post-judgment. The Court will not further this prejudice by

23   allowing Blair to intervene in the matter nearly two years after the litigation commenced, after

24   _____

25          [6]  Further, even after the sale of the vessel was confirmed, Peter Blair filed another motion
     seeking a stay of the transfer of the vessel, arguing that a previous Order allowing Blair to remove
26   personal property from the vessel was not complied with. (Doc. No. 51.) The magistrate judge denied
     the motion, finding that Blair had failed to support his allegation that his personal property remains
27   on the vessel. (Doc. No. 116.)  Further, the magistrate judge recognized that the pleadings in the
     litigation indicate that, on October 2009, Blair boarded the vessel and removed boxes containing his
28   personal property.  (*Id.*)  Finally, the magistrate judge recognized that Blair's motion appeared to be
     yet "another attempt by Blair to prevent the sale of the vessel" and not to actually remove personal
     property.  (*Id.*)

settlement by the existing parties have been reached, and after numerous efforts to further delay

the sale of the vessel and distribution of proceeds have been rejected.  As such, Blair's motion to

intervene is **DENIED** as untimely.  "Timeliness is 'the threshold requirement' for intervention."

*League of United Latin Am. Citizens*, 131 F.3d at 1302.  Thus, because the Court finds the motion

to intervene untimely, it need not reach the remaining elements of Rule 24.[7]  *See id.*; *see also*

*Washington*, 86 F.3d at 1503.

## CONCLUSION

For those reasons, Claimants Peter Blair, James Singleton and David Moniz's third party

claims and Peter Blair's motion to intervene are **HEREBY DENIED**.  The stipulated judgment

remains in full effect.


IT IS SO ORDERED.


DATED:  September 2, 2010

Janis L. Sammartino
Honorable Janis L. Sammartino
United States District Judge

_____

[7]   However, if the Court were to consider these factors, the Court would further find that intervention is not necessary to protect Blair's interest sufficient to warrant intervention.  *See* Rule 24(a)(2).  The stipulated judgment itself provides that all proceeds left over after the payment of Wachovia's mortgage will be deposited with the Court pending the validity of liens as adjudicated in the related case, in which Blair is a party.  (*See* Doc. No. 22 at 5.)  Thus, finding that Blair has not validly asserted a third party claim of right in this litigation as explained above, but that he is free to litigate his rights in the related action as to the remaining proceeds, if any, Blair's intervention in the present action is unnecessary to protected his valid interests.  As such, the Court would deny Peter Blair's motion to intervene on the merits, as well.